1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    MICHAEL LYNN WATERS,              )      1:08-cv-00737-OWW-GSA-PC
                                        )
11              Plaintiff,              )      ORDER DISMISSING COMPLAINT FOR
                                        )      FAILURE TO STATE A CLAIM, WITH
12         vs.                          )      LEAVE TO AMEND
                                        )
13    LT. A. DIAZ, et al.,              )      ORDER FOR PLAINTIFF TO FILE FIRST
                                        )      AMENDED COMPLAINT
14              Defendants.             )
                                        )      ORDER FOR CLERK TO SEND
15                                      )      PLAINTIFF § 1983 COMPLAINT FORM
                                        )
16    _____  )      THIRTY DAY DEADLINE

17         Michael Lynn Waters ("plaintiff") is a state prisoner proceeding pro se in this civil rights action

18    pursuant to 42 U.S.C. § 1983.  On May 27, 2008, plaintiff filed the complaint commencing this action.

19    I.      SCREENING REQUIREMENT

20         The court is required to screen complaints brought by prisoners seeking relief against a

21    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court

22    must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

23    or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

24    from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any

25    filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time

26    if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

27    granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

28
                                              1

1     "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions,"

2 none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512

3 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain

4 statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such

5 a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds

6 upon which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. A court may dismiss a complaint only if it is clear

7 that no relief could be granted under any set of facts that could be proved consistent with the allegations.

8 <u>Id</u>. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

9 entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that

10 a recovery is very remote and unlikely but that is not the test.'" <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th

11 Cir. 2003) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Austin v. Terhune</u>, 367 F.3d

12 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the

13 claim . . . .'" (quoting <u>Fontana v. Haskin</u>, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal

14 pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490 U.S. 319,

15 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements

16 of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th

17 Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

18 **II.      SUMMARY OF COMPLAINT**

19     Plaintiff is a state prisoner presently housed at Corcoran State Prison ("CSP") in Corcoran,

20 California, where the events at issue allegedly occurred. Plaintiff makes the following allegations in the

21 complaint and requests damages and preliminary injunctive relief, including orders for defendants to

22 "leave [him] alone," release his property, and transfer him from CSP to a "very safe" facility.

23     Plaintiff alleges that before he was transferred to CSP, he was granted single-cell status at Pelican

24 Bay State Prison ("PBSP") due to his mental condition. Plaintiff alleges he has Obsessive Compulsive

25 Disorder and hears voices in his head, resulting from a head injury and three-month coma. Plaintiff

26 alleges that the Attorney General's Office stated in writing that he was granted single-cell status on

27 March 3, 2006. He also alleges that the Warden at PBSP indicated in an appeal decision that plaintiff

28

                                              2

1   should not be moved to any other prison because word was spread to all black inmates that he refused

2   to help another black inmate who was jumped by two white inmates.  Plaintiff alleges he has proof that

3   officer Edwards at PBSP (who is not named as a defendant) falsified the document of April 23, 2008

4   used to transfer him to CSP and to allow him to be double-celled.

5        Plaintiff alleges that since his transfer to CSP, ICC members and officers at CSP refuse to

6   recognize his single-cell status and intend to force him to double-cell with another inmate.  Plaintiff

7   alleges that at his ICC hearing on May 21, 2008, the Chairperson stated, "I don't care if the Attorney

8   General did give you a single cell.  I'm taking it.  He can double-cell here in Ad-Seg."  Plaintiff alleges

9   he was not allowed to bring his documentary evidence showing single-cell status to the ICC hearing on

10  May 21, 2008.

11       Plaintiff, a known ex-gang member, states that he fears for his life if he is double-celled.

12  Plaintiff alleges he told officers at CSP that if he is double-celled, he will try to kill any inmate forced

13  upon him.  Plaintiff alleges that when he asked Lt. A. Diaz to review the Attorney General's paperwork,

14  Diaz stated, "I don't give a fuck what the Attorney General said. You got what you got coming.  Nothing

15  in this cell but a blanket."  Plaintiff is also fearful of remaining at CSP because he witnessed Diaz

16  pepper-spray another black inmate while other officers, including a mental health doctor, stood around

17  smiling.

18       Plaintiff  alleges that Lt. Diaz took away his high blood sugar medications and the changing

19  wraps used for a "Granuloma" infection on his hand.  Plaintiff also alleges that defendants took away

20  his toiletries, sheets, socks, underwear, paper, pen, and legal mail.

21       Plaintiff alleges that when he arrived at CSP, he explained to Officer Cortez that he was an Ad-

22  Seg inmate with mental health issues and should be handcuffed.  Plaintiff alleges that Cortez stated in

23  front of other inmates and R.N.s, "I read your C-file.  You need to stop telling on people.  If you want

24  to P.C. up, go to where you're going to P.C. up."

25       Plaintiff alleges he can hardly see, his lower back is painful, and his urine is very yellow.

26  ///

27  ///

28

1   Plaintiff names as defendants Lt. A. Diaz and his crew of officers, Warden Derral Adams, R&R

2   Officer Cortez, and all ICC members of 05/21/08 (including a female Chairperson, Captain, Sergeant,

3   CC-II Officer, Mental Health staff RNs, Mental Health team, and Doctors of 3AO3).

4   **III.    PLAINTIFF'S CLAIMS**

5   Plaintiff does not clearly articulate the claims he brings in the complaint.  However, in separate

6   paragraphs apart from the allegations, he makes mention of CCR Title 15 Section 3160 Inmates Access

7   to Courts, retaliation for initiation of a lawsuit, Section 3161 Inmate-owned legal material, and 14th

8   Amendment Due Process.

9   The Civil Rights Act under which this action was filed provides:

10          Every person who, under color of [state law] . . . subjects, or causes to be
            subjected, any citizen of the United States . . . to the deprivation of any
11          rights, privileges, or immunities secured by the Constitution . . . shall be
            liable to the party injured in an action at law, suit in equity, or other
12          proper proceeding for redress.

13   42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution

14   and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations

15   omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created

16   interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."

17   Id.

18   Section 1983 plainly requires that there be an actual connection or link between the actions of

19   the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department

20   of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person deprives

21   another of a constitutional right, where that person 'does an affirmative act, participates in another's

22   affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the

23   deprivation of which complaint is made.'"  Hydrick v. Hunter, No. 03-56712, 2007 WL 2445998, *5

24   (9th Cir. Aug. 30, 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he

25   'requisite causal connection can be established not only by some kind of direct, personal participation

26   in the deprivation, but also be setting in motion a series of acts by others which the actor knows or

27   ///

28                                              4

1   reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson

2   at 743-44).

3

4         A.      **Defendants Adams, ICC Captain, ICC Sergeant, ICC CC-II Officer, Mental Health staff R.N.s, and the Mental Health team**

5         In this instance, plaintiff has not alleged a link between the actions or omission of the defendants

6   named above.  Plaintiff must set forth some minimal facts indicating that these individual defendants

7   were aware of plaintiff's rights and acted in a way that deprived him or those rights.  Plaintiff fails to

8   allege any facts whatsoever about these defendants.  Therefore, plaintiff fails to state a claim under

9   section 1983 against defendants Derral Adams, the ICC Captain, the ICC Sergeant, the ICC CC-II

10  Officer, Mental Health staff R.N.s, and the Mental Health team.

11        B.      **Conditions of Confinement**

12        To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

13  conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v. Chapman, 452

14  U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must

15  provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.;

16  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th

17  Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison

18  officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious

19  harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

20        The deliberate indifference standard involves an objective and a subjective prong.  First, the

21  alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer v. Brennan, 511 U.S.

22  825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must

23  "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  Farmer, 511 U.S. at 837.

24  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions

25  of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by

26  failing to take reasonable measures to abate it.  Id. at 837-45.  Prison officials may avoid liability by

27  presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable,

28                                5

1    albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official

2    is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at

3    835; Frost, 152 F.3d at 1128.

4         "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment

5    Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The

6    objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary

7    standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required

8    to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted).

9    With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal

10   offenders pay for their offenses against society, only those deprivations denying the minimal civilized

11   measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."

12   Id. (quotations and citations omitted).

13        The Eighth Amendment guarantees sanitation, Hoptowit, 682 F.2d at 1246, including personal

14   hygiene supplies such as soap and toothpaste. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996).

15   Also, the denial of adequate clothing may, under certain circumstances, rise to the level of an Eighth

16   Amendment violation. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994).

17        Plaintiff fails to state a claim for unsafe conditions of confinement against any named defendant.

18   He comes closest to stating a claim against Lt. A. Diaz, who plaintiff alleges took away his high blood

19   sugar medications and changing wraps for the infection on plaintiff's hand, and left him in a cell with

20   nothing but a blanket. However, it is unclear in the complaint whether it was Diaz, or another defendant,

21   who took away plaintiff's toiletries, sheets, socks, underwear, paper, pen, and legal mail. Even assuming

22   plaintiff's allegations against Diaz to be true, plaintiff fails to allege sufficient facts demonstrating that

23   Diaz knew of and disregarded an excessive risk to plaintiff's health or safety. Therefore, plaintiff fails

24   to state a claim for unsafe conditions of confinement upon which relief can be granted under section

25   1983 against any of the named defendants.

26   ///

27   ///

28                                          6

1

**C.      Medical Care**

2      A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment

3  violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's

4  necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'"  Toguchi v.

5  Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

6  2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the

7  official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 834.

8  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere

9  with  medical  treatment,"  or  in  the  manner  "in  which  prison  physicians  provide  medical  care."

10  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs.,

11  Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in

12  receiving medical treatment, the delay must have led to further harm in order for the prisoner to make

13  a claim of deliberate  indifference to serious medical needs.  McGuckin, 974 F.2d at 1060 (citing

14  Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).  The needless

15  suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298 F.3d 898, 904

16  (9th Cir. 2002).

17      Plaintiff alleges that his high blood sugar medications and changing wraps for a "Granuloma"

18  infection were taken away by defendant Diaz.  However, plaintiff fails to allege that he has suffered any

19  injury due to lack of the medications or wraps.  Although plaintiff states that he suffers lower back pain,

20  his urine is very yellow, and he can hardly see, he fails to allege these symptoms were caused by his lack

21  of medication or changing wraps.  Therefore, plaintiff fails to state a claim for inadequate medical care

22  under section 1983 against defendant Diaz or any other named defendant.

23

**D.      Failure to Protect**

24      Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.

25  Hoptowit, 682 F.2d at 1250-51; Farmer, 511 U.S. at 833.  To establish a violation of this duty, the

26  inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious

27  harm to the inmate's safety.  Id.at 834.  The deliberate indifference standard involves an objective and

28

1    a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . ."

2    Id. at 834 (citing Wilson, 501 U.S. at 298).  Second, the prison official must "know[] of and disregard[]

3    an excessive risk to inmate health or safety."  Id. at 837.

4         Plaintiff alleges that defendants at CSP disregarded the risk of danger to plaintiff when they

5    ignored his single-cell status and decided he could be double-celled.  However, plaintiff fails to allege

6    facts showing that any of the defendants knew of and disregarded an excessive risk to his health or

7    safety. Plaintiff's allegation that he told defendant Diaz he feared for his life if he is double-celled does

8    not demonstrate that Diaz knew that double-celling plaintiff would cause an excessive risk to his safety.

9    Moreover, plaintiff does not allege in the complaint that he was actually double-celled by Diaz or any

10   other defendant.  Verbal harassment or abuse alone is not sufficient to state a constitutional deprivation

11   under 42 U.S.C. § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not

12   rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Thus,

13   plaintiff fails to state a claim for failure to protect under section 1983 against any of the defendants.

14        **E.     Retaliation**

15        Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the

16   government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985);

17   see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807

18   (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five

19   basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

20   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

21   of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

22   goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).    An allegation of retaliation against

23   a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section

24   1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

25        Plaintiff fails to allege facts showing that any action taken against him was because of his

26   protected conduct, that such action chilled the exercise of his First Amendment rights, or that the action

27   ///

28                                        8

1    did not reasonably advance a legitimate correctional goal.  Therefore, plaintiff fails to state a claim for

2    retaliation under section 1983 against any of the named defendants.

3        **F.    Due Process**

4        Plaintiff appears to allege that his rights to due process were violated, premised on the decision

5    at an ICC hearing at CSP on May 28, 2007 that plaintiff does not have single-cell status and may be

6    placed in a double cell with another inmate.  Plaintiff alleges that he was not allowed to bring

7    documentary evidence of his single-cell status to the hearing.

8        The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived

9    of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

10   In order to state a cause of action for deprivation of procedural due process, a plaintiff must first

11   establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise

12   from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

13       With respect to liberty interests arising from state law, the existence of a liberty interest created

14   by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515

15   U.S. 472, 481-84 (1995).  Liberty interests created by prison regulations are limited to freedom from

16   restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary

17   incidents of prison life." Id. at 484; see May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted

18   inmate's due process claim fails because he has no liberty interest in freedom from state action taken

19   within sentence imposed and administrative segregation falls within the terms of confinement ordinarily

20   contemplated by a sentence) (quotations omitted); see also  Resnick v. Hayes, 213 F.3d 443, 447 (9th

21   Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally

22   expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no

23   protected liberty interest in being free from confinement in the SHU) (quotations omitted).

24       Prison officials have broad administrative and discretionary authority over the institutions they

25   manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests.

26   Hewitt, 459 U.S. at 461.  Plaintiff has not demonstrated that he has a liberty interest in remaining in a

27   single cell.  Even if the Attorney General's Office stated in writing that he was granted single-cell status,

28                                                      9

1   this does not show that CSP's decision to allow double-celling is not state action taken within plaintiff's

2   imposed sentence.   Plaintiff alleges no facts that double-celling does not fall within the terms of

3   confinement ordinarily contemplated by his sentence.   Therefore, plaintiff fails to state a claim for

4   violation of his due process rights under section 1983 against defendants.

5
6   **G.   CCR Title 15 Section 3160 Inmates Access to Courts; Section 3161 Inmate- owned legal material**

7   As stated above, "[S]ection 1983 . . .   creates a cause of action for violations of the federal

8   Constitution and laws."  Sweaney, 119 F.3d at 1391 (internal quotations omitted).   "To the extent

9   that the violation of a state law amounts to the deprivation of a state-created interest that reaches

10  beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

11  In a paragraph apart from his allegations in the complaint, plaintiff makes mention of CCR

12  Title 15 Section 3160 Inmates Access to Courts and Section 3161 Inmate-Owned Legal Material.

13  **1.   Section 3160**

14  Section 3160 prohibits obstruction of inmate access to the courts.   15 CA ADC § 3160(a).

15  Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518

16  U.S. 343, 346 (1996).   The right is limited to direct criminal appeals, habeas petitions, and civil

17  rights actions.  Id. at 354.   Claims for denial of access to the courts may arise from the frustration or

18  hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the

19  loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v.

20  Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).   To state a claim based on denial of

21  access to the courts, a plaintiff must allege facts demonstrating that he suffered an actual injury by

22  being shut out of court.  Id. at 415; Lewis, 518 U.S. at 351.

23  Plaintiff's allegations in the complaint are insufficient to give rise to a claim for relief under

24  section 1983 for denial of access to the courts.   Plaintiff has not alleged any facts supporting a claim

25  that a policy has caused him to suffer an actual injury in a direct criminal appeal, habeas petition, or

26  civil rights action.   To the extent that violation of Section 3160 amounts to the deprivation of a

27  state-created interest in access to the courts beyond that guaranteed by the federal Constitution,

28

1    section 1983 offers no redress.  Therefore, plaintiff fails to state a claim for denial of access to the

2    courts under section 1983.

3                          **2.    Section 3161**

4          Section 3161 governs the amount of personal legal materials which an inmate may possess in

5    the inmate's living quarters.  15 CA ADA § 3161.

6          Plaintiff alleges that defendants took away his toiletries, sheets, socks, underwear, paper, pen,

7    and legal mail.  The Due Process Clause of the Fourteenth Amendment protects prisoners from being

8    deprived of property without due process of law.  Wolff, 418 U.S. at 539.  Prisoners have a protected

9    interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However,

10   while an authorized, intentional deprivation of property is actionable under the Due Process Clause,

11   see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455

12   U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized

13   intentional deprivation of property by a state employee does not constitute a violation of the

14   procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

15   postdeprivation remedy for the loss is available."  Hudson, 468 U.S. at 533.

16         Plaintiff has not alleged that the deprivation of his property was authorized.  Therefore,

17   plaintiff's claim is not actionable under the Due Process Clause.  If the deprivation was unauthorized

18   and intentional, he may not pursue a claim for relief under section 1983.  Accordingly, plaintiff fails

19   to state a claim under section 1983 based on the loss of his personal property.

20   **III.   CONCLUSION**

21         Plaintiff's complaint fails to state a claim upon which relief may be granted under section

22   1983 because plaintiff has not adequately linked the alleged constitutional violation to actions or

23   omissions of named defendants.  The court will provide plaintiff with the opportunity to file an

24   amended complaint curing the deficiencies identified by the court in this order.

25         Plaintiff is informed he must demonstrate in the amended complaint how the conditions

26   complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy,

27   625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named

28                                             11

1   defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some

2   affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo,

3   423 U.S. at 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.

4         Plaintiff should note that although he has been given the opportunity to amend, it is not for

5   the purposes of adding new defendants relating to issues arising after May 27, 2008.  In addition,

6   plaintiff should take care to include only those claims that have been exhausted prior to the initiation

7   of this suit on May 27, 2008.

8         Finally, plaintiff is advised that an amended complaint supercedes the original complaint,

9   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

10  (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

11  pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original

12  complaint which are not alleged in an amended complaint are waived."  Id. 814 F.2d at 567 (citing to

13  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

14  1474.

15        Accordingly, based on the foregoing, it is HEREBY ORDERED that:

16        1.    Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

17        2.    The Clerk's Office shall send plaintiff a section 1983 civil rights complaint form;

18        3.    Within **thirty (30) days** from the date of service of this order, plaintiff shall file an

19              amended complaint, boldly and clearly entitled "First Amended Complaint;" and

20        4.    If plaintiff fails to comply with this order, the court will recommend that this action

21              be dismissed for failure to state a claim.

22

23        IT IS SO ORDERED.

24        Dated:   **June 4, 2008**              ____**/s/ Gary S. Austin**____
                                                UNITED STATES MAGISTRATE JUDGE
25

26

27

28                                              12